UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
STEVEN DIBERARDINO,

                Plaintiff,

– against –

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-2868

PAMELA K. CHEN, United States District Judge:

Plaintiff Steven Diberardino ("Plaintiff"), brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Disability Insurance Benefits ("DIB"). Plaintiff commenced this action on May 10, 2017, and both parties moved for judgment on the pleadings. For the reasons set forth below, the Court grants Plaintiff's motion and denies the Commissioner's motion. The case is remanded for further proceedings consistent with this Order.

## BACKGROUND

On November 4, 2013, Plaintiff filed an application for DIB, claiming that he had been disabled due to upper and lower back herniated discs since June 10, 2013. (Tr. 57-58.)[1] The claim was initially denied on March 11, 2014. (Tr. 65.) After his claim was denied, Plaintiff requested a hearing on May 9, 2014, and appeared before an administrative law judge ("ALJ") on January 15, 2016. (Tr. 22, 77-78.) By decision dated January 29, 2016, ALJ Louis M. Catanese found that Plaintiff was not disabled within the meaning of the Social Security Act from his disability onset date, June 10, 2013, through the date of the ALJ's decision. (Tr. 17-18.) On February 3, 2016, Plaintiff requested a review of the

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript.

ALJ's decision. (Tr. 222-27.) The Commissioner's decision became final when the Appeals Council denied Plaintiff's request for review on March 10, 2017. (Tr. 1-3.) Plaintiff filed his complaint on May 10, 2017 (Dkt. 2), and both parties moved for judgment on the pleadings (Dkts. 16, 17).

## DISCUSSION

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted).

The Court finds that the ALJ erred on three grounds. First, the ALJ did not properly apply the treating physician rule, which states that the treating physician's opinion on the subject of medical disability is "(1) binding on the fact-finder unless contradicted by substantial evidence and (2) entitled to some extra weight, even if contradicted by substantial evidence, because the treating source is inherently more familiar with a claimant's medical condition than are other sources." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). Here, despite the ALJ's acknowledgment of Plaintiff's various diagnoses, the ALJ made little reference to the opinions of Plaintiff's treating physicians—namely Dr. Kenneth Chapman and Dr. Kiran Patel, both orthopedists—who were in the best position to develop an informed opinion as to Plaintiff's physical condition. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (finding that generally

more weight is given to opinions from treating sources and considering factors such as consistency with the record as a whole and evidence in support of the opinion).

Plaintiff was treated by Dr. Chapman from July 2013 to October 2013, and Dr. Patel from November 2014 to December 2015. (*See* Tr. 147, 279, 300, 339.) Dr. Chapman diagnosed Plaintiff with Lumbosacral Neuritis[2], Displacement Lumbar Disc without Myelopathy[3], Lumbosacral Spondylosis without Myelopathy[4], Brachial Radiculitis[5], and Cervicalgia[6]. (Tr. 264-265, 269, 274.)

---

[2] Lumbosacral neuritis is "the inflammation of the lower spinal nerves. These nerves run along the spinal cord within the vertebrae. These nerves are in the L1 to L5 vertebrae region of the lower spine. They run deeply with blood vessels, muscles, joints, and discs of the spine. Any irritation can lead to lumbosacral neuritis." *What is Lumbosacral Neuritis?*, DOCTORS HEALTH PRESS, https://www.doctorshealthpress.com/general-health-articles/lumbosacral-neuritis/ (last visited July 12, 2018).

[3] Displacement lumbar disc refers to "a herniated disc or disc protrusion, and occurs when part of the disc gets pushed into the spinal canal. This displacement and pressing on the spine often produces symptoms of pain, numbness, tingling, weakness and difficulty with coordination." *Spinal Disc Displacement Warning Signals*, DISC SPINE INSTITUTE, https://www.discspine.com/back-stories/spinal-disc-displacement-signs/ (last visited July 12, 2018). Myelopathy refers to disease of the spinal cord, which was not present here.

[4] Lumbosacral spondylosis is "a painful degenerative spinal condition that occurs primarily as the result of aging." *What is Lumbosacral Spondylosis?*, HEALTHFULLY, https://healthfully.com/lumbosacral-spondylosis-5079593.html (last visited July 12, 2018). Myelopathy refers to disease of the spinal cord, which was not present here.

[5] Brachial radiculitis is a "type of peripheral neuropathy related to brachial plexus that severely affects the chest, shoulder, arm and hand. In peripheral neuropathy, the nerves that carry signals to and from the brain, spinal cord, and certain part[s] of the body are ruptured due to any physical reasons . . . In this rare condition, damage to the brachial plexus occurs all of a sudden, and on many occasions, it may occur without any apparent physical damage to that part of the body. Brachial radiculitis normally affects the lower nerves of the brachial plexus that links one or both sides of the chest, and both shoulders, arms, and hands with the spinal cord." *What is Brachial Radiculitis and How Is It Treated?*, EPAIN ASSIST, https://www.epainassist.com/nerves/brachial-radiculitis (last visited July 12, 2018).

[6] Cervicalgia is "neck pain that occurs toward the rear or the side of the cervical (upper) spinal vertebrae. It generally is felt as discomfort or a sharp pain in the neck, upper back or shoulders." *Cervicalgia – Overview of Causes, Symptoms, and Treatments*, LASER SPINE INSTITUTE, https://www.laserspineinstitute.com/back_problems/neck_pain/overview/cervicalgia/ (last visited July 12, 2018).

Dr. Chapman treated Plaintiff with three lumbar transforaminal epidural steroid injections and one cervical epidural steroid injection. (Tr. 265-277.) At a physical examination on September 23, 2013, Dr. Chapman concluded that Plaintiff had persistent, severe neck pain and cervical radicular pain that had been only minimally improved with conservative therapy. (Tr. 277.) Dr. Chapman noted that he referred Plaintiff for a surgical consultation regarding his spinal condition. (Tr. 277.) In addition, on July 8, 2013, Dr. Chapman reported that Plaintiff had limited lumbar range of motion and pain in this area. (Tr. 264.) He prescribed Plaintiff 10 mg of Percocet to help manage the pain. (Tr. 272.)

Dr. Patel similarly diagnosed Plaintiff with Displacement Cervical Disc without Myelopathy, Brachial Radiculitis, Cervicalgia, Lumbosacral Spondylosis without Myelopathy, and Displacement Lumbar Disc without Myelopathy. (Tr. 301-302.) To treat Plaintiff's pain, Dr. Patel prescribed 10 mg of Percocet, suggested treatment with lumbar transforaminal epidural steroid injections, and referred Plaintiff to a surgeon for further treatment options. (Tr. 302, 314, 329.) Dr. Patel reported that Plaintiff's pain was constant with symptoms including lower extremity pain, lower extremity numbness, lower back pain, and leg weakness. (Tr. 300, 336.) He also reported that Plaintiff's symptoms were exacerbated by bending, lifting, standing, coughing, sneezing, straining, and he was functionally limited in his general activity, walking ability, work, housework, hobbies, social relationships, sleep, and enjoyment of life. (Tr. 336.) In December 2015, Dr. Patel concluded that Plaintiff was having such poor pain control with his current Percocet prescription that he prescribed Butrans patches[7]. (Tr. 341.)

---

[7] A Butrans Patch is used to "help relieve severe ongoing pain (such as due to arthritis, chronic back pain). Buprenorphine belongs to a class of drugs known as opioid (narcotic) analgesics." *Butrans Patch*, WEBMD, https://www.webmd.com/drugs/2/drug-155153/butrans-transdermal/details (last visited July 12, 2018).

In finding that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work, the ALJ ignored the conclusions of Dr. Chapman and Dr. Patel, which were well-supported and were not inconsistent with other substantial evidence in the record. As a result, at least two of the ALJ's determinations directly contradict the findings of Plaintiff's treating physicians. First, on December 11, 2015, Dr. Patel noted that Plaintiff's functional limitations included his walking ability, work, and general activity. (Tr. 339.) In contrast, the ALJ noted, "while the claimant has some limitations and experiences some pain, he is still able to walk normally and hold a normal posture, as well as not experiencing any tenderness, pain, muscle spasm or loss of reflexes." (Tr. 16.) Second, Dr. Patel treated Plaintiff between June 2015 and December 2015 for neck pain, extreme lower back pain, lower extremity numbness, lower extremity pain, and upper extremity stiffness. (Tr. 333, 336.) During these visits, Dr. Patel gave Plaintiff a prescription for 4 mg of Zanaflex in addition to his prescription for 10 mg of Percocet. Dr. Patel reported that Plaintiff's symptoms were exacerbated by bending, lifting, sitting and standing, and that he had functional limitations in nearly all areas, including walking, working, and daily living. (Tr. 329, 336-339.) In contrast, the ALJ emphasized that in June 2015 Plaintiff was alert, fully oriented, and in no acute distress, with normal gait and posture, with intact neurological findings. (Tr. 15-16.) The Court finds that the ALJ erred by not following the treating physician rule in determining Plaintiff's RFC, and that the ALJ's failure to do so resulted in glaring inconsistencies between his conclusions and the medical record, which requires remand. *See Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y 2010) ("Failure to provide explicit good reasons for not crediting a treating source's opinion is a ground for remand.") (internal quotations and citation omitted).

The second ground for remand is that the ALJ failed to develop the record fairly and fully, independent of Plaintiff's burden to establish his DIB claim. The medical record here consisted mostly of test results and laboratory reports, with brief notations and comprehensive reports of Plaintiff's status. Even though the ALJ acknowledged that the "[t]he record contains no opinion evidence" (Tr. 16), the ALJ did not endeavor to obtain any opinions from any of Plaintiff's treating physicians about Plaintiff's claimed disabilities. As a result, the ALJ failed to address the severity of Plaintiff's degenerative disc disease, a condition that caused him severe and constant pain, with little relief from medication or conventional methods. *See Nusraty v. Colvin*, 15-CV-2018, 2016 WL 5477588, at *13 (E.D.N.Y. Sept. 29, 2016) (finding that the ALJ had an "affirmative duty" to develop the record and "should have followed up with [the treating physicians] to request supporting documentation or to obtain additional explanations for [their] findings."). Plaintiff's treating physicians repeatedly suggested that he receive surgical consultations, and frequently noted the severity of Plaintiff's pain and the ineffectiveness of conservative treatment to alleviate it. (Tr. 272, 274-75, 329, 341.) The ALJ's failure to take the necessary steps to develop the record undermines the reliability of the RFC evaluation upon which the ALJ based his decision, and warrants remand. *See Lamorey v. Barnhart*, 158 Fed. App'x 361, 362 (2d Cir. 2006) (where ALJ fails to adequately develop the record by requesting treating physician's notes, remand is usually appropriate).

The third ground for remand is that the ALJ failed to sufficiently consider evidence regarding the effects of Plaintiff's medications. In determining whether a claimant's impairments limit his ability to work, the ALJ must consider his subjective symptoms, which include the effectiveness and side effects of any medications taken for those symptoms. At the administrative hearing, the ALJ questioned Plaintiff about his current medications and the side effects of those

medications. (Tr. 37-38.) Plaintiff testified that he was being prescribed 10 mg of Percocet, to be taken twice a day, and in addition, 15 mg of a time-released morphine sulfate, stating that the medication caused lack of coordination, balance, drowsiness or a little dizziness, and constipation. (Tr. 38.) Vocational Expert Gerard Belchick testified at Plaintiff's hearing that someone on heavy opioid pain killers would not be able to perform light and sedentary jobs. (Tr. 53-54.)

In his decision, the ALJ made scant reference to the vocational expert or Plaintiff's testimony regarding the side effects of Plaintiff's multiple medications. (*See* Tr. 15-16.) Considering the type, dosage, effectiveness, and side effects of the medications Plaintiff was on during the disability period, it is clear that the side effects of these medications would have an impact on his ability to perform light and sedentary jobs, making it the duty of the ALJ to further develop the record in an effort to assess that impact on Plaintiff's RFC. *See Archambault v. Astrue*, No. 09-CV-6363 (RJS) (MHD), 2010 WL 5829378, at *34 (S.D.N.Y. Dec. 13, 2010) (holding that plaintiff's use of narcotic pain medication supported credibility of plaintiff's subjective testimony concerning his pain and was inconsistent with the ALJ's conclusion that plaintiff's pain was less severe than claimed), *report and recommendation adopted*, No. 09-CV-6363, 2011 WL 649665 (S.D.N.Y. Feb. 17, 2011). The ALJ's failure to consider the effect of Plaintiff's medications in his RFC requires remand. *See Longerman v. Astrue*, No. 11-CV-383 (YBK), 2011 WL 5190319, at *14 (N.D. Ill. Oct. 28, 2011) (ALJ's failure to consider the numerous narcotic medications taken by plaintiff warranted remand).

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: July 12, 2018
Brooklyn, New York