UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
STEVE DIBERARDINO,

                Plaintiff,

     - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-02868 (PKC)

PAMELA K. CHEN, United States District Judge:

Daniel A. Osborn ("Osborn"), counsel for Plaintiff Steve Diberardino ("Plaintiff"), moves for approval of attorney's fees pursuant to Section 206(b) of the Social Security Act, 42 U.S.C. § 406(b),[1] in the amount of $33,527.50. For the reasons set forth below, the Court grants the motion in part, denies it in part, and awards Osborn $20,000 in attorney's fees.

## BACKGROUND

On May 10, 2017, Plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security that denied him disability insurance benefits. (Dkt. 2.) Plaintiff filed a motion for judgment on the pleadings (Dkt. 16), and the Commissioner filed a cross-motion for judgment on the pleadings (Dkt. 17). On July 12, 2018, the Court granted Plaintiff's motion, denied the Commissioner's cross-motion, and remanded the case to the Social Security Administration ("SSA") for further proceedings. (Dkt. 21.) The parties then stipulated, and the Court so ordered, that Plaintiff would be awarded $9,200 in attorney's fees

---

[1] This Memorandum & Order will refer to the provisions of the Social Security Act by their United States Code section numbers, *e.g.*, § 406(b) for Section 206(b) of the Act.

1

under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). (Dkt. 23; 9/10/2018 Docket Order.)

On remand, a hearing was held before an administrative law judge ("ALJ"). (Osborn Declaration, ("Osborn Decl."), Dkt. 24-2, ¶ 11.) Osborn did not represent Plaintiff at that hearing. (*Id.* ¶ 14.) Subsequently, Plaintiff was awarded disability insurance benefits. (*See* ALJ Decision, Dkt. 24-6.) As required by the Social Security Act, the Commissioner withheld 25% of the total past-due benefits payable to Plaintiff—or $33,527.50—so that Plaintiff's counsel could: (1) petition the SSA under 42 U.S.C. § 406(a) for approval of a reasonable fee as compensation for services during the proceedings at the agency level; and (2) seek an award from this Court under 42 U.S.C. § 406(b) for the time counsel expended representing Plaintiff before the Court.

On March 9, 2020, the SSA mailed Plaintiff a Notice of Award, informing him of the amount that had been withheld to pay fees. (Dkt. 24-7, at ECF[2] 6–7.) On the same day, the SSA sent a copy of the Notice of Award to counsel who had represented Plaintiff before the agency on remand, Michael Swaaley ("Swaaley"). (*Id.* at ECF 2.) Osborn did not receive the Notice of Award until April 22, 2020, when Swaaley emailed it to him. (Osborn Decl., Dkt. 24-2, ¶ 15.) The next day, April 23, 2020, Osborn filed the instant motion for attorney's fees. (Dkt. 24.)

Osborn requests fees in the amount of $33,527.50—the full 25% of Plaintiff's award that has been withheld—in connection with 52.2 hours of work that he and his colleague undertook on behalf of Plaintiff. (Dkt. 24-1, at ECF 5.) According to the time records that Osborn has submitted, he and his colleagues spent this time on the following tasks: (1) reviewing the file, drafting a complaint along with associated documents, and filing the case; (2) reviewing the ALJ decision

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

and Administrative Transcript; (3) researching case law; (4) drafting a motion and a brief for judgment on the pleadings and preparing them for filing; (5) calling Plaintiff and the Court about the filing of the motion and brief; (6) reviewing the Commissioner's cross-motion; and (7) drafting and filing a reply brief. (Dkt. 24-4, at ECF 4–5.) Osborn himself spent three hours on these tasks; the remaining 49.2 hours were spent by his colleague, Lindsay M. Trust ("Trust"). (*See id.*) The time records, which were submitted for purposes of negotiating a fee under the EAJA, indicate an hourly fee between $201 and $204. (*Id.* at ECF 5.) According to Osborn, his firm's hourly non-contingent fee is $400. (Dkt. 24-1, at ECF 7.)

Plaintiff agreed to pay Osborn a contingency fee for representation before this Court amounting to 25% of all past-due benefits or the fee awarded under the EAJA, whichever is greater. (Fee Agreement, Dkt. 24-3, at ECF 2.) As described above, 25% of Plaintiff's past-due benefits is $33,527.50, and Osborn requests this full amount—an effective hourly rate of $642.29. (Dkt. 24-1, at ECF 7.) The government contends that Osborn's motion is untimely and that the Commissioner, in agreeing to an EAJA award of $9,200, did not agree that Osborn reasonably spent 52.2 hours representing Plaintiff. (Dkt. 25, at ECF 3–5.)

## DISCUSSION

### I.    Timeliness of the Motion

Although 42 U.S.C. § 406(b) contains no time limitation for filing a motion for attorney's fees, the Second Circuit recently held that Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure "provides the applicable limitations period for filing § 406(b) motions." *Sinkler v. Berryhill*, 932 F.3d 83, 87–88 (2d Cir. 2019). Under Rule 54(d)(2)(B), a post-judgment motion for attorney's fees must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). But this rule poses "a practical problem" in the context of § 406(b) motions: the attorney filing a § 406(b) motion needs to know the amount of the benefits award, since fees are

3

statutorily capped at 25% of that award, but the Commissioner's calculation of the award amount typically occurs months after the district court has entered judgment. *Sinkler*, 932 F.3d at 87. To avoid this problem, the Second Circuit concluded that the 14-day time limit under Rule 54(d)(2)(B) "is subject to equitable tolling when § 406(b) motions must await the SSA Commissioner's calculation of benefits." *Id.* at 91.

In *Sinkler*, however, the Second Circuit left it ambiguous as to exactly when the equitable tolling period ends, and the 14-day filing period begins to run. When summarizing its holding at the beginning and end of its opinion, the Second Circuit stated that the tolling period ends, and the filing period starts to run, when "the claimant receives notice" of the benefits award. *Id.* at 85, 91. But when discussing its actual reasoning, the Second Circuit indicated that the relevant date is when "counsel receives notice of the benefits award." *Id.* at 88.

This distinction matters here. The SSA mailed Plaintiff a Notice of Award on March 9, 2020. (Dkt. 24-7). Plaintiff presumably received the Notice on March 12, 2020. *See Sinkler*, 932 F.3d at 89 n.5 ("Nothing in this opinion departs from the law's presumption that a party receives communications three days after mailing."). If the filing period under Rule 54(d)(2)(B) began to run on March 12, 2020, the filing of Osborn's motion on April 23, 2020—42 days later—would fall outside of the 14-day period. But if the filing period began running on April 22, 2020, the date on which Osborn received the Notice of Award from Swaaley (Dkt. 24-2, ¶ 15), the filing of the motion one day later would be well within the 14-day period.

The logical reading of *Sinkler* suggests that the 14-day filing period should start to run when counsel receives notice of the benefits award. The Second Circuit's reason for equitably tolling the 14-day filing period in the context of § 406(b) motions is that "parties who must await the Commissioner's award of benefits on remand cannot be expected to file an application for

4

attorney's fees that are statutorily capped by the amount of an as-yet-unknown benefits award." *Sinkler*, 932 F.3d at 88.  As recognized in *Sinkler*, "statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing." *Id*. (quoting *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011)).  Yet, where the claimant has been notified of a benefits award, but the claimant's counsel has not, the amount of the award remains "as-yet-unknown" to the relevant party filing the § 406(b) motion, and fairness would dictate that the period for filing the motion should be tolled until counsel receives notice of the award.  The Second Circuit's reasoning in *Sinkler*, therefore, supports using the date on which claimant's counsel in an SSA matter receives notice of a benefits award, not the date on which the claimant receives notice, for purposes of equitable tolling.  Indeed, at least one court in this circuit has agreed.  *See Boylan v. Saul*, No. 15-CV-6730 (LTS) (JCF), 2020 WL 5235755, at *2 n.3 (S.D.N.Y. Sept. 2, 2020).

Regardless, the Court need not—and does not—decide the correct interpretation of *Sinkler*.  In holding that Rule 54(d)(2)(B) applies in the context of § 406(b) motions, the Second Circuit was mindful that the 14-day limitations period "is not absolute," and such a period applies "unless a statute or a court order provides otherwise." *Sinkler,* 932 F.3d at 89 (quoting Fed. R. Civ. P. 54(d)(2)(B)).  "Thus, district courts are empowered to enlarge that filing period where circumstances warrant." *Id.*  The Court finds that the circumstances here warrant doing so.  Osborn was not Plaintiff's counsel before the SSA on remand and was not notified by the SSA of Plaintiff's ultimate benefit award.  (Dkt. 24-2, ¶ 14.)  Once Osborn received the Notice of Award from Swaaley on April 22, 2020 (*id.* ¶ 15), he filed the instant motion the next day (Dkt. 24).  Accordingly, even if the filing period began to run when Plaintiff presumably received the Notice of Award on March 12, 2020, enlargement of the filing period is warranted under the

5

circumstances, and the motion is deemed to be timely. *See Sinkler*, 932 F.3d at 89–90; *see also Palazzolo v. Saul*, No. 18-CV-1097 (VSB) (JLC), 2020 WL 6108253, at *2–3 (S.D.N.Y. Oct. 16, 2020) (enlarging the filing period and deeming a § 406(b) motion filed within 14 days of when counsel received notice to be timely); *Boylan*, 2020 WL 5235755, at *2 (same); *Almodovar v. Saul*, No. 16-CV-7419 (GBD) (SN), 2019 WL 7602176, at *2–3 (S.D.N.Y. Oct. 4, 2019) (same); *Lesterhuis v. Comm'r of Soc. Sec.*, 408 F. Supp. 3d 292, 294–95 (W.D.N.Y. 2019) (same).

## II.  Reasonableness of the Requested Fee

Section 406(b) provides that a court may award a "reasonable fee" that is "not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A). The Court's determination of fees requested under § 406(b) "must begin with the agreement." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). "[T]he district court may reduce the amount called for by the contingency agreement only when it finds the amount to be unreasonable." *Id.*

To determine whether a fee is "unreasonable," a district court should consider: (1) "whether the contingency percentage is within the 25% cap;" (2) "whether there has been fraud or overreaching in making the agreement;" and (3) "whether the requested amount is so large as to be a windfall to the attorney." *Id.* at 372; *see also Barbour v. Colvin*, No. 12-CV-00548 (ADS), 2014 WL 7180445, at *1 (E.D.N.Y. Dec. 10, 2014) (same). In addition, if fee awards are made to the attorney under both the EAJA and § 406(b), the attorney must refund to the plaintiff the amount of the smaller fee award. *See Barbour*, 2014 WL 7180445, at *2 (citing *Porter v. Comm'r of Soc. Sec.*, No. 8:06-CV-1150 (GHL), 2009 WL 2045688, at *4 (N.D.N.Y. July 10, 2009)); *see also Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients.").

6

Here, Osborn's requested fee of $33,527.50 is within the 25% cap. (Dkt. 24-7, at ECF 6.) Since there are no allegations of fraud or overreaching with respect to the fee agreement, the only question is whether a fee of $33,527.50 would result in a windfall to Osborn.

The courts in this circuit have identified several relevant considerations as to whether a requested award of attorney's fees would constitute a windfall: (1) whether the attorney's efforts were particularly successful for the plaintiff; (2) whether the effort expended by the attorney is demonstrated through non-boilerplate pleadings and arguments that involved both real issues of material fact and required legal research; and (3) whether the case was handled efficiently due to the attorney's experience in handling social security cases. *Rowell v. Astrue*, No. 05-CV-1592 (CBA) (JMA), 2008 WL 2901602, at *4 (E.D.N.Y. July 28, 2008) (quoting *Trupia v. Astrue*, No. 05-CV-6085 (SJF), 2008 WL 858994, at *4 (E.D.N.Y. Mar. 27, 2008)). In addition, "[a]lthough the reviewing court may not use the lodestar method to calculate the fee due, a record of the number of hours spent on the case in federal court may assist a court in determining whether a given fee is reasonable." *Benton v. Comm'r of Soc. Sec.*, No. 03-CV-3154 (ARR), 2007 WL 2027320, at *2 (E.D.N.Y. May 17, 2007).

The Court finds that the request of $33,527.50 for 52.2 hours of work in this case—only three of which were spent by Osborn himself, as opposed to his colleague, Trust—would result in an unreasonable fee and a windfall.

To start, the Court agrees with the government that Osborn unreasonably claims 52.2 hours of work. (*See* Dkt. 25, at ECF 4–5.) Osborn points out that this case required more time because he did not represent Plaintiff in the original proceeding before the SSA. (Dkt. 24-1, at ECF 6.) But the time spent on reviewing the administrative transcript—totaling 13 hours—does not constitute the bulk of the time spent by Osborn and Trust in this matter. (*See* Dkt. 24-4, at ECF

7

4.) Rather, Osborn and Trust spent approximately 20 hours preparing the initial motion and another 11 hours on the reply brief. (*Id.*) These 31 hours alone equal or exceed the *total* amount of time typically claimed by attorneys in SSA cases before this Court. *See, e.g.*, *Collins v. Saul*, No. 16-CV-6673 (PKC), 2020 WL 4676353, at *2 (E.D.N.Y. Aug. 11, 2020) (24.5 hours of work); *Tamburri v. Saul*, No. 16-CV-5784 (PKC), 2019 WL 6118005, at *1 (E.D.N.Y. Nov. 18, 2019) (29.4 hours of work); *Morris v. Saul*, No. 17-CV-259 (PKC), 2019 WL 2619334, at *1 (E.D.N.Y. June 26, 2019) (32.5 hours of work); *Sweda v. Berryhill*, No. 16-CV-6236 (PKC), 2019 WL 2289221, at *1 (E.D.N.Y. May 28, 2019) (34.9 hours of work); *Rivera v. Berryhill*, No. 13-CV-5060 (PKC), 2018 WL 2436942, at *1 (E.D.N.Y. May 30, 2018) (39.5 hours of work); *Colon v. Berryhill*, No. 15-CV-06314 (PKC), 2018 WL 1730335, at *1 (E.D.N.Y. Apr. 9, 2018) (21.8 hours of work); *Karki v. Comm'r of Soc. Sec.*, No. 13-CV-6395 (PKC), 2018 WL 1307947, at *1 (E.D.N.Y. Mar. 13, 2018) (21.1 hours of work).

Osborn provides no justification for the inordinate amount of time that he and Trust spent simply preparing the filings. The filings submitted by Osborn, while not boilerplate, were not unusually complicated. Notably, despite the fact that Trust spent 49.2 hours working on this matter, *i.e.*, all but three of the claimed 52.2 hours, and was responsible for preparing all of the filings, Osborn provides no information about Trust's level of legal experience or any expertise she may have litigating SSA matters. Therefore, the Court has no basis to find that "the case was handled efficiently due to the attorney's experience in handling social security cases," one of the factors to be considered in the windfall analysis. *Trupia*, 2008 WL 858994, at *4 (quoting *Joslyn v. Barnhart*, 389 F. Supp. 2d 454, 456–57 (W.D.N.Y. 2005)). In fact, between the 13 hours spent

8

on reviewing the administrative record and the 31 hours spent on preparing the pleadings,[3] along with additional hours claimed for intake and client communication, the total of 52.2 hours being claimed in this case far exceeds a typical matter of this type. *See Sarro v. Astrue*, 725 F. Supp. 2d 364, 367–68 (E.D.N.Y. 2010) (noting that courts in this district have found 20–40 hours to be a reasonable expenditure of time in an average social security disability benefits case, and reducing the hours claimed by the plaintiff's attorney by almost a third); *see also supra* (citing *Collins*, 2020 WL 4676353, at *2; *Tamburri*, 2019 WL 6118005, at *1; *Morris*, 2019 WL 2619334, at *1; *Sweda*, 2019 WL 2289221, at *1; *Rivera*, 2018 WL 2436942, at *1; *Colon*, 2018 WL 1730335, at *1; *Karki*, 2018 WL 1307947, at *1).

The government seems to suggest that only 87% of Osborn's claimed 52.2 hours, or 45.4 hours, were reasonably expended in representing Plaintiff. (*See* Dkt. 25, at ECF 4–5.) The Court believes that even this percentage reduction in the number of hours is not enough given the disparity in the number of hours being claimed by Osborn and the number of hours typically claimed in a case. *See* discussion *supra*. Accordingly, Osborn will only be compensated for 40 hours of work, which is still high for these types of cases, but takes into account Osborn's need to spend additional time reviewing the record due to his lack of participation in the underlying SSA proceedings.

Furthermore, the Court finds that an effective hourly rate of $642.29 is not reasonable in this case. Courts have reduced awards in analogous circumstances. *See*, *e.g.*, *Benton*, 2007 WL 2027320, at *2–3 (reducing fees of $44,694.75 for 33.5 hours of work, resulting in an hourly rate

---

[3] This figure does not include the time that Trust spent preparing a two-page boilerplate complaint, which is block-billed along with "[r]eview[ing] AC Denial and ALJ Denial[,] client intake[, and] draft[ing] Summons and Complaint and associated documents[,]" for a total of five hours. (Dkt. 24-4, at ECF 4.)

9

of $1,334, to $15,000 in total fees, or $447.76 per hour); *Devenish v. Astrue*, 85 F. Supp. 3d 634, 638–39 (E.D.N.Y. 2015) (reducing fees of $14,700 for 14.7 hours of work, resulting in an hourly rate of $1,000, to $5,145 in total fees, or $350 per hour).[4] A reduction is even more justified here where the claiming attorney, Osborn, spent only three hours working on the case, and, as previously discussed, has provided no information about the attorney who did the lion's share of the work, Trust, such as her level of legal experience, expertise in the area, and normal non-contingency hourly rate.

Accordingly, Osborn shall be awarded $20,000 for 40 hours of work. The Court finds that an award of $20,000 would adequately compensate Osborn for the time that he and Trust spent on this case, the risks that Osborn accepted in undertaking the representation of Plaintiff on a contingency basis, and the successful result he and Trust obtained for their client. Furthermore, this fee amount, which translates into an hourly rate of $500, compensates Plaintiff's counsel at a rate 25% higher than Osborn's hourly non-contingent fee, even though Osborn barely worked on the case and has provided no information about Trust's hourly non-contingent fee. Indeed, an hourly rate of $500 is higher than what Osborn was recently awarded in comparable cases. *See, e.g.*, *Lopez v. Comm'r of Soc. Sec.*, No. 18-cv-2186 (CS) (LMS), 2020 U.S. Dist. LEXIS 44509, at *11–12 (S.D.N.Y. Mar. 11, 2020) (awarding $11,000 for 27.5 hours of work, or $400 per hour), *report and recommendation adopted*, Docket Order dated Apr. 13, 2020; *Alcala v. Comm'r of Soc.*

---

[4] Osborn is correct that courts in this circuit have approved fee awards under 42 U.S.C. § 406(b) that are above market rates. *See, e.g.*, *Valle v. Colvin*, No. 13-CV-2876 (JPO), 2019 WL 2118841, at *3–4 (S.D.N.Y. May 15, 2019) (approving a request of $23,969.88 for 22.2 hours of work, or an hourly rate of $1,079.72); *Mills v. Berryhill*, No. 15-CV-5502 (DLI), 2019 WL 1507923, at *2 (E.D.N.Y. Apr. 5, 2019) (approving a request of $37,993.25 for 37.7 hours of work, or an hourly rate of $1,007.78). However, this Court must use its own discretion to determine "whether the requested amount is so large as to be a windfall to the attorney." *Wells*, 907 F.2d at 372.

*Sec.*, No. 18-cv-293 (ADS), slip op. (E.D.N.Y. Apr. 29, 2020) (awarding $21,872.90 for 47.1 hours of work, or approximately $464 per hour).  Thus, a $500 hourly rate amply compensates Plaintiff's counsel for their work in this matter, and an award of $20,000 is reasonable and satisfies the underlying policy goal of ensuring that claimants have qualified counsel representing them in their social security appeals.  *See, e.g.*, *Muniz v. Astrue*, No. 09-CV-3954 (ARR), 2011 WL 5563506, at *6 (E.D.N.Y. Nov. 15, 2011) ("Further, an award of fees . . . amounting to an hourly rate of $333.33 . . . satisfies the underlying policy goal of enabling social security claimants to secure quality legal representation.").

Osborn points out that this Court in the past approved an award with an effective hourly rate approaching the one requested here.  *See Charles v. Colvin*, No. 13-CV-4782 (PKC), 2015 WL 7459919, at *2–3 (E.D.N.Y. Nov. 24, 2015) (finding that an award with an effective hourly rate of $603.98 would not result in a windfall to plaintiff's counsel).  In *Charles*, however, the requested fee amounted to a mere $13,891.50 (for 23 hours of work).  *Id.* at *2.  The attorneys requesting the fee, moreover, appeared to have "extensive experience in the social security field," and the attorney whose hours comprised the bulk of the basis for the requested fee worked exclusively on social security disability claims.  *Id.* at *3.  Again, here, Osborn has not presented any evidence that he or Trust have extensive experience or expertise litigating these types of claims that would justify a higher rate; indeed, the excessive amount of time expended reviewing the administrative transcript and preparing the briefs in this case, as discussed above, suggests otherwise.  In short, this is a different case than *Charles*, and in this case, an award greater than $20,000 would be a windfall to counsel, and accordingly would be unreasonable.

## CONCLUSION

The motion for attorney's fees under 42 U.S.C. § 406(b) is granted in part and denied in part, and Osborn is awarded $20,000 in attorney's fees.  The Commissioner is instructed to

11

disburse this amount to Osborn Law, P.C.  Upon receipt of this award, Osborn shall promptly refund Plaintiff $9,200, which represents the EAJA fees that counsel has already received.  The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: November 17, 2020
       Brooklyn, New York